## MARTHA A. SWAIN

*v.*

## HENRY R. EDMUNDS.

Before a will can be admitted to probate, it must appear, among other things, that it was declared by the testator to be his will, in the presence of two witnesses present at the same time. The recital of that fact in an attestation clause subscribed by the witnesses is *prima facie* evidence of the performance of that requisite. If there be no such attestation clause, the burden is upon the proponent of the will to prove such declaration to the satisfaction of the tribunal passing upon the question.

---

On appeal from an order of the orphans court of Cape May county.

*Mr. William H. Corbin* and *Mr. Thomas E. French,* for the appellant.

*Mr. Howard Carrow,* for the respondent.

THE ORDINARY.

The order appealed from admits a paper purporting to be the
will of Sallie S. Stevens to probate as such will.

The single ground of objection to the probate is that the paper
was not declared by Miss Stevens to be her will, in the presence
of the subscribing witnesses, when it was executed.

The execution took place at Cape May city, under the super-
vision of the son of the respondent, a young lawyer of Phila-
delphia, named Charles W. Edmunds, in the house of Miss
Stevens and in the presence of Mr. Edmunds and Marion
Young, who, for little over a month, had been Miss Stevens'
housekeeper and nurse.

It is admitted that the testatrix and the witnesses present have
subscribed their names to the will, but as the document does not
contain an attestation clause reciting particulars to show com-
plete obedience to the requirements of the statute, which, upon
the establishment of the signatures, would make *prima facie*
proof of the due execution of the instrument (*Darnell* v. *Buzby,
5 Dick. Ch. Rep. 725, 727*), the burden is thrown upon the pro-
ponent to go further than proof of the mere signatures, and
affirmatively show that the will was executed in conformity with
the statute's requirements; and in bearing that burden he must,
among other things, prove that the testatrix declared the writing
to be her will in the presence of the two witnesses.   That fact
is shown when he makes it appear that the testatrix clearly
evinced to the witnesses in some way by which one mind can
communicate with another, that the writing she desired them
to attest was her will.   *Darnell* v. *Buzby, supra; Robbins* v.
*Robbins, 5 Dick. Ch. Rep. 742.*

The proof upon that point in the present case is conflicting.
It comes almost entirely from the two subscribing witnesses.
The witness Edmunds testifies that he was twenty-two years
of age in April, 1894, six months before the will was executed,
and that in the following June he was admitted to the bar in
Philadelphia; that he had been connected as student and clerk

with his father's law office in Philadelphia for four years pre-
ceding his admission to the bar, and during that time and the
time he had been at the bar when the will was executed he had.
copied wills for his father, and, with his father, had been present
at the execution of wills, acting in some cases as the subscribing
witness thereto, and, in one or two instances, in his father's
absence had superintended the execution of wills; that a short
time before the paper in dispute was executed, he took instruc-
tions for changes in a former will made by Miss Stevens, from
her at her house in Camden, and, having prepared the present
will in accordance with those instructions, on the 14th of Octo-
ber, 1894, went to Cape May city, whither Miss Stevens had
preceded him, and, upon entering the house, saw Miss Stevens
alone in the parlor, and there read the will to her, and, upon
her expressing her satisfaction with it, informed her that there
must be another witness present besides himself at its execution,.
whereupon she said that she would get Mrs. Young, and they
went together into an adjoining room, to which Miss Stevens
called Marion Young. He testifies: "I told Mrs. Young I
wanted her to witness Miss Stevens' last will and testament, and
she said, 'Very well.'" In another place he says: "I asked
Miss Stevens if it was her last will and testament, and she re-
peated after me." In yet another place he repeats: "I asked
her, and Miss Stevens asked her, to witness her last will and
testament." And still in another place he says: "Then I said
to Miss Stevens, this is your last will and testament, and she
said, 'Yes, it is my last will and testament,' repeating it after
me; I recollect that."

Marion Young testifies that one day early in October, 1894,.
at the request of Miss Stevens, she went to the law office of.
Henry R. Edmunds, the respondent and father of Charles W..
Edmunds, to procure him to make some changes in Miss Stev-
ens' will; that she saw him and explained to him her business,
and at the same time saw Charles W. Edmunds there; that,.
in obedience to her summons, Charles W. Edmunds went to
Camden and saw Miss Stevens; that she saw Charles W. Ed-
munds when he then called upon Miss Stevens, but was not

present during the interview between them; that, on the 14th
of the same October, she saw Charles again at Miss Stevens'
home at Cape May city; that she opencd the door for him and
showed him into the front parlor, and that after he had been
there a few minutes Miss Stevens came to the dining-room door,
to which room the witness had gone, and said to her, "Mrs.
Young, will you come in and witness my signature?" She con-
tinues: "I went into the back parlor and handed her a chair,
and I stood alongside of her; Mr. Edmunds stood on the other
side and asked me to witness her signature and sign my name,
and I did." She further says that Miss Stevens did not say
that the paper was her will, nor did Charles W. Edmunds say
so; that she had no idea what she was signing; that she did
not know what business Charles W. Edmunds had with Miss
Stevens then. In response to the question, "Was the word
'will' mentioned?" she replied, "It was not; I am positive
of that, because it was the first time in my life I ever was con-
cerned with a will, and the thought passed through my mind I
might be signing my own death warrant; if he had told me I
was signing a will, I would not have thought any such thing as
that." In reply to a question, she said that it did not occur to
her at the time to ask what she was signing. She says that,
after the paper had been signed, Miss Stevens said to Charles
W. Edmunds, "Take it and give it to your father." She was
asked this question: "You recollected the fact at the time that
you had been at Mr. Edmunds' office in Philadelphia, and re-
quested him to come over?" and replied, "No, sir; I did not;
I was interested in a book, and paid but little attention to their
business."

Henry R. Edmunds remembers that Marion Young, when
she called at his office, in October, 1894, said that Miss Stevens
wanted some alterations made in her will.

If the testimony is to be weighed merely by the number of
witnesses, it is evenly balanced, and the case stands precisely as
it stood before the offer of proofs. The burden cast upon the
proponent has not been borne, and the will cannot be admitted

10

to probate. But is the testimony of the witnesses of equal weight?

The orphans court thought that Mr. Edmunds was more likely to be correct in his remembrance than Mrs. Young, because he had gone to Cape May city particularly charged with the duty of superintending the execution of the will and instructed by his father, and hence was aware of the importance of the declaration of the will and more likely to remember that it was made. This consideration was based, to some extent, upon the testimony of Mr. Charles Edmunds, that he thought that the laws of Pennsylvania required that the will should be published at the time of its execution. But when the case was presented to me, the statute of Pennsylvania prescribing the requisites for the execution of wills was offered in evidence, and it exhibited that a declaration or publication of the will by a testator is not required in Pennsylvania. It is, therefore, now urged that this circumstance, together with the fact that there is no attestation clause to the will in question, showing compliance with the requirements of the New Jersey statute, but instead thereof the words "witnesses at signing," written over the signatures of the witnesses, exhibit that Mr. Edmunds was probably ignorant of the requirements of the New Jersey law, and impressed that the "signing" alone was the important thing for the witnesses to attest, for otherwise the full attestation clause would have been prepared and have shown his knowledge of the law, and, this being so, it is argued that the young man, in his ignorance of the New Jersey law and inexperience, failed to appreciate that other than the Pennsylvania law could apply to the case, and therefore probably pursued the formalities he had been accustomed to observe in his father's office, which presumably did not include that which the law of Pennsylvania did not require—a declaration or publication of the will. Furthermore, it is insisted that the incentive of the desire the young lawyer had to sustain his work, and the fact that his father is the executor of the will, are circumstances tending to discredit him.

In criticism of the testimony of Mrs. Young, the proponent urges, in the first place, that her repeated declarations to the

Swain v. Edmunds.

effect that she did not know the nature of the transaction, or, at least, surmise it, when the will was executed, is not entitled to credence in face of the fact that little more than a week before she had gone from Camden to Mr. Edmunds' office to call him to change Miss Stevens' will, and there saw Charles Edmunds, and a little later again saw the latter gentleman attending at Camden, in obedience to the summons thus given, upon Miss Stevens, and having a private, confidential conference with her, and a few days later again saw him, not on a week day, when ordinary matters of business would be attended to, but on Sunday, after another private conference with Miss Stevens, superintending the execution of an evidently-important paper. These events, happening in close succession, evince the following up of a single important matter which, with woman's usual astuteness, she must have known, or, at least, have inferred, was the execution of the altered will which Miss Stevens had in contemplation when she proclaimed it to Mrs. Young in making her the messenger to Mr. Edmunds' office, and hence her deliberate and reiterated assertion to the contrary, under oath, must weaken confidence in her entire testimony.

And in the second place, he urges that the fact that when this situation was called to Mrs. Young's attention, and she was asked whether she did not, at the time of the execution of the will, recall her visit to Mr. Edmunds, she replied in the negative, adding, by way of excuse, that she was interested in a book and paid but little attention to the business; and he insists that that fact evinces that when the execution took place she was so preoccupied in mind and indifferent to the transaction that the declaration of the will, if made, was likely to have escaped her memory, or to have remained there in such hazy and indeterminate remembrance as to be susceptible to resolution in her mind, in one way or the other, by the influences by which she was surrounded at the time when she testified, the exertion of which, naturally by parties who are inimical to the will, was evidenced by the attendance of those parties upon the witness to, from and at the court.

I have carefully weighed all these suggestions. The testi-

mony of Charles Edmunds, that the will was declared, is too positive, coming, as it does, from a witness who, without question, must realize his precise situation, to be dismissed as untrue upon the possibility that, through ignorance of the New Jersey law, he followed the statute of Pennsylvania, which does not require publication, even though I may agree that the evidence as to his ignorance of the New Jersey law is not without weight.

It may well be that, though the statute of Pennsylvania does not enjoin the publication of a will, the precaution of publication, generally observed in practice and recognized as a usual requirement by treatise writers, was the rule of the elder Mr. Edmunds' office in the execution of wills, under which the young lawyer was instructed.

I am fully persuaded that Charles Edmunds' testimony is not the outcome of any mistake or misapprehension on his part. It must be either deliberately true or deliberately false, and I perceive no ground which is sufficient to justify the acceptance of the latter alternative.

Coming to the consideration of Mrs. Young's testimony, I recognize the strength of the insistment that she must at least have inferred that she was witnessing the execution of Miss Stevens' will, if she was not absolutely indifferent to her surroundings. Her reply to the question whether she did not remember her visit to Mr. Edmunds' office, evinces her realization of the strength of that circumstance, and her consequent explanation that it did not come to her mind at the time because she was so interested in a book that she paid little attention to the business in which Miss Stevens and Mr. Edmunds were engaged, affords, I think, a satisfactory solution to all the difficulty in this case. I remember, in this connection, that in another part of her testimony, indicating the same indifference to the transaction, she says that it did not occur to her to ask what she was signing.

It appears to be a just conclusion that her absorption in the book which interested her was so great that her impression and remembrance of the transaction of the execution of the will, and particularly that part of it which was addressed to mental under-

·standing, as distinguished from that which concerned the mere physical action of attending and signing, was slight, vague and ·uncertain, and I cannot but now conclude that when she was ·required to testify to it, in her efforts to remember that which ·was done and said, she recalled her physical acts, but fell into the error, as to the language used, which has led to· the contradic-·tion between her and Mr. Edmunds.

This conclusion accords the greater weight to the testimony ·of Mr. Edmunds, which thereby becomes sufficient to establish ·the publication of the will.

I will affirm the order appealed from.